UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-CR-20172-KMW

UNITED STATES OF AMERICA,

v.

MICHAEL ROSS KANE,
SHANE HAMPTON,
and GEORGE WOLVAARDT,

    Defendants.
_____/

## OMNIBUS ORDER DENYING DEFENDANTS' AMENDED JOINT MOTIONS TO DISMISS COUNTS ONE, THREE, AND FOUR OF THE INDICTMENT

THIS MATTER is before the Court on Defendants Michael Ross Kane and Shane Hampton's ("Defendants") two Amended Motions to Dismiss [DE 57; DE 58].[1] The first Motion seeks to dismiss the Indictment's Count One, which alleges a conspiracy to manipulate the price of HYDRO, the digital asset of Defendants' company Hydrogen Technology ("Hydrogen"), in violation of the federal securities laws. Defendants argue that HYDRO is not a security. DE 57 at 2. The second Motion seeks to dismiss Counts Three and Four, the substantive wire fraud counts, contending that the two charged payments were not in furtherance of the alleged scheme. DE 58 at 1. The Government's Combined Response asserts that Defendants disregard the law on motions to dismiss in criminal cases and attempt to raise factual issues that the law requires the jury to resolve. DE 60 at 1.

---

[1] In its November 15, 2023 Paperless Order [DE 56], the Court required Defendants to file an Amended Motion to Dismiss due to their failure to comply with Local Rule 7.1. Because Defendants filed Amended Motions to Dismiss complying with the Local Rules, their initial Motions to Dismiss [DE 53; DE 55] are now denied as moot.

1

The Court has considered Defendants' Motions [DE 57; DE 58], the Government's Combined Response in Opposition [DE 60], the record, and counsel's arguments at the status conference on November 28, 2023. The Motions must be denied because the Indictment [DE 3] sufficiently alleges the legal elements and facts of a securities fraud conspiracy and substantive wire fraud under the Federal Rules of Criminal Procedure, and the merits are for the jury to determine.

I. BACKGROUND

This case arises from Defendants' alleged effort to manipulate HYDRO's price, by using a "bot" that conducted automated "spoof" orders[2] and "wash" trades[3]. The bot was designed by co-defendant George Wolvaardt's company Moonwalkers, a market-making firm whom Defendants used for that purpose. Count One alleges, from June 2018 through April 2019, Defendants conspired to artificially increase HYDRO's price and thereby enrich themselves. DE 3 at 4–5. During the relevant period, Defendants and Moonwalkers employees frequently communicated about the manipulation scheme using interstate wires. For example, on October 26, 2018, in describing the trading volume generated by the bot's automated trades, Moonwalkers' President and CEO Tyler Ostern[4] messaged Defendant Kane, Hydrogen's CEO, "around half is fake." *Id.* at 9 ¶ 13. Defendants Kane and Hampton agreed to pay, and caused to be paid to, their co-conspirators Bitcoin in exchange for the co-conspirators' efforts to manipulate the

---

[2] The Indictment defines spoof orders as those placed without a legitimate intent to execute, to create a false appearance of active trading. DE 3 ¶ 13.
[3] The Indictment defines wash trades as those involving no change in beneficial ownership, because the same individual is both the buyer and the seller. DE 3 ¶ 12.
[4] On August 16, 2023, Tyler Ostern was sentenced by Chief Judge Altonaga to twenty-four months' imprisonment and supervised release for three years. *United States v. Ostern*, Case No. 23-CR-20165-CMA, ECF No. 24 (S.D. Fla. Aug. 16, 2023).

market for HYDRO through the bot's illegal trading features. *Id.* at 11 ¶ 16. Counts Three and Four charge two such payments from Defendant Kane to co-defendant George Wolvaardt in furtherance of the price manipulation scheme: one on February 10, 2019 for 2.5 bitcoin and the other on March 8, 2019 for 2.3 bitcoin. *Id.* at 15–16.

## II.  LEGAL STANDARD

### a. Motions to dismiss in criminal cases

A party may raise by pretrial motion any defense, objection, or request that the court can determine "without a trial on the merits." Fed. R. Crim. P. 12(b)(1). There is no summary judgment procedure in criminal cases. *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam). An indictment charging a conspiracy to violate federal securities laws must allege facts that show an agreement by two or more persons to try to accomplish a shared and unlawful plan and at least one overt act during the relevant period to achieve some object of the conspiracy, here the manipulation of HYDRO's price through wash and spoof trading. An indictment charging wire fraud in violation of 18 U.S.C. § 1343[5] must allege facts that show (1) an intentional participation in a scheme or artifice to defraud another of money or property, and (2) use of interstate wires to execute the scheme or artifice. *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007).

In ruling on a motion to dismiss in a criminal case, a district court is limited to reviewing the face of the indictment. *United States v. Sharpe*, 438 F.3d 1257, 1263

---

[5] 18 U.S.C. § 1343 states in part, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

3

(11th Cir. 2006). An indictment must (1) present the elements of the charged offense, (2) notify the defendant of the charges against him, and (3) protect him against double jeopardy for any subsequent prosecution for the same offense. *United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999); *see also* Fed. R. Crim. P. 7(c)(1). If the indictment tracks the statute's language, it must be accompanied with facts and circumstances that will inform the accused of the specific offense. *Sharpe*, 438 F.3d at 1263 (citation and quotation marks omitted). When testing an indictment's sufficiency, the Court must take the indictment's allegations as true. *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978).[6]

### b. Federal securities laws

Because a central purpose of the 1934 Securities Exchange Act is to protect investors, *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967), the Act prohibits the manipulation of securities prices. Wash trading and spoof trading are both prohibited by the Act, as they both are a means to manipulate the market. Wash trading refers to engaging in trades with no change in beneficial ownership to create a false or misleading appearance of active trading in a security. 15 U.S.C. § 78i(a)(1). Spoof trading refers to placing an order without a legitimate intent of executing it, thereby creating active trading in the security, and raising or depressing its price, to induce trading in that security by others. 15 U.S.C. § 78i(a)(2).

With the Securities Exchange Act and the 1933 Securities Act before it, Congress enacted a definition of "security" sufficiently broad to encompass virtually any instrument that might be sold as an investment. *Reves v. Ernst & Young*, 494 U.S. 56,

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding the former Fifth Circuit's decisions rendered prior to October 1, 1981.

4

61 (1990). The definition of a security in the Securities Acts includes the catch-all term "investment contract." 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10). In *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946), the Supreme Court established the classic test to determine whether a transaction or an instrument qualifies as an investment contract. The Eleventh Circuit has divided the *Howey* test into its three elements: (1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others. *See, e.g., S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999). As to the second element, the Eleventh Circuit adopted the "vertical commonality" standard, which is met when the fortunes of all investors are inextricably tied to the efficacy of the promoter. *Id.*

### III. DISCUSSION

#### a. Counts One, Three, and Four adequately state an offense.

The Indictment meets the Rule 12(b) standard. Fed. R. Crim. P. 12(b). It alleges specific facts that support the elements of conspiracy to commit securities fraud and substantive wire fraud, tracks the relevant statutes' language, and fairly informs Defendants of the charges.

Count One alleges, between June 2018 and April 2019, Defendants agreed with each other and Moonwalkers employees to manipulate HYDRO's price through wash trades and spoof orders and thereby enrich themselves and Hydrogen. DE 3 at 4–5. The alleged means by which they carried out the conspiracy was the bot that Moonwalker designed and implemented. *Id.* at 6. The Indictment lays out specific examples of Defendants' frequent communications in furtherance of the price manipulation conspiracy via interstate wires, including private Slack channels. *Id.* at 8

¶ 11. Moreover, the Indictment brings the conspiracy within the ambit of federal securities laws by charging that HYDRO is an investment contract under the *Howey* factors. *Id.* at 3 ¶¶ 11, 14. Further, Count One tracks the language of the Securities Exchange Act's relevant provisions. *Id.* at 4–5.

Likewise, Counts Three and Four sufficiently allege Defendants' intentional participation in a scheme to defraud and their use of the interstate wires in furtherance of that scheme. As for the purpose and means of the scheme to defraud, the Indictment incorporates its allegations from Count One. *Id.* at 15. To meet the second, jurisdictional element, the Indictment specifies the two bitcoin payments from Defendant Kane to Defendant Wolvaardt in furtherance of the scheme. *Id.* at 15–16. The Indictment also tracks the language of the federal wire fraud statute, 18 U.S.C. § 1343.

Accordingly, on its face, the Indictment adequately states the respective offenses in Counts One, Three, and Four.

### b. Whether HYDRO is a security must be left to the jury.

At the Status Conference on November 28, 2023, Defendants wanted to challenge whether HYDRO is an investment contract.[7] However, this argument is premature. This highly fact-intensive inquiry is one for the jury.

Defendants marshal several civil cases, which do not inform the Court as to the Indictment's facial sufficiency. They also offer the Court evidence outside the Indictment's four corners, which the Court cannot consider at this juncture. The *Howey* investment contract inquiry is undoubtedly a factual one which must be resolved by the

---

[7] Defendants' Amended Motion to Dismiss Count One [DE 57] repeatedly characterizes HYDRO as a "utility token," as opposed to an investment contract.

6

jury after all the evidence is presented. *See Roe v. United States*, 287 F.2d 435, 440 (5th Cir. 1961).[8] In *Roe,* the Fifth Circuit clearly admonished the trial court, explaining that the investment contract determination was not for the Judge to make, but for the jury, after proper instruction. *Id.* at 441.

The Government has proffered enough anticipated evidence for a reasonable jury to conclude based on the *Howey* factors that the HYDRO token indeed is an investment contract. Defendants do not contest the first *Howey* prong, "investment of money." As to the second "common enterprise" prong, the requisite commonality is satisfied when all investors' fortunes are inextricably tied to the promoter's efficacy. *S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999). During trial, the Government anticipates introducing blockchain-based evidence that Defendants and Hydrogen retained control over most minted HYDRO tokens, aligning Defendants' interests with investors'. DE 60 at 14. It also expects to introduce testimony as to how the HYDRO investors were similarly situated. *Id.* Based on this evidence, a reasonable jury could conclude that there was a common enterprise.

Similarly, the jury could reasonably conclude that there was an expectation of profits to be derived solely from the managerial or entrepreneurial efforts of others. The trial evidence is expected to include Defendant Kane's statements and marketing materials that led investors to expect profits from Defendant Kane and his associates' efforts. *Id.* In addition, HYDRO investors themselves are expected to testify that they relied on Defendants' expertise to develop the token and increase its value. *Id.*

---

[8] *See supra* note 6.

Therefore, the jury could reasonably find that Defendants were promoting investment contracts. However, the determination is ultimately up to the jurors themselves, who will be required to conduct their own *Howey* analysis based on the trial evidence.

### c. Defendants' "net buyer" argument is misplaced.

As to the substantive wire fraud counts, Defendants argue that the two charged wire transmissions in February and March 2019 could not have been in furtherance of any scheme to defraud, because Hydrogen was a "net buyer" of HYDRO after January 7, 2019, meaning that the company was buying HYDRO more than it was selling it. DE 58 at 8–10. The argument appears to conflate the scheme's financial success with continuing efforts to manipulate the market and payments in furtherance of the scheme. In any event, this is a merits question to be decided by the jury.

Further, taking true the allegation that Defendants were conducting wash trades after that with no change in beneficial ownership where the same individual is the buyer and the seller, Defendants and/or Hydrogen would necessarily have had to keep buying HYDRO to create a false appearance of robust supply and demand.

For these reasons, Defendants' argument that their company was a net buyer of the token at the time of the charged payments in their efforts to defeat Counts Three and Four is without merit.

### IV. CONCLUSION

The Indictment is facially sufficient and adequately states a conspiracy to commit securities fraud and substantive wire fraud. Moreover, whether HYDRO is an investment contract under the *Howey* factors is solely for the jury, and based on the

proffered trial evidence, a reasonable jury could conclude that the HYDRO meets the *Howey* factors for an investment contract. Accordingly, it is

ORDERED that:

1. Defendants' Amended Joint Motion to Dismiss Count One of the Indictment [DE 57] is DENIED.

2. Defendants' Amended Joint Motion to Dismiss Counts Three and Four of the Indictment [DE 58] is DENIED.

DONE AND ORDERED in Miami, Florida, this 30th day of November, 2023.

_____
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc: Counsel of Record