**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 23-CR-20172-KMW-2

UNITED STATES OF AMERICA,

v.

SHANE HAMPTON,

    Defendant.
_____/

## **OMNIBUS ORDER ON MOTIONS *IN LIMINE***

THIS MATTER is before the Court on Motions *in Limine* filed by the Government [DE 74] and Defendant Shane Hampton ("Defendant") [DE 75]. Inasmuch as the Motions deal with similar issues and arguments, the Court resolves all requests in this Omnibus Order. The Court has considered the Motions, the parties' Responses [DE 81; DE 82], Defendant's Reply [DE 84], and the record. The parties have raised eleven issues, of which three are uncontested. This Order addresses the three uncontested issues first, followed by the remaining eight issues, combining certain issues under one subsection to the extent they overlap.

### I. BACKGROUND

The four-count Indictment in this case charges Defendant and his co-defendants with conspiracy to commit securities price manipulation, conspiracy to commit wire fraud, and wire fraud. DE 3. Defendant was the Chief of Financial Engineering at Hydrogen Technology Corporation ("Hydrogen"), a financial technology ("fintech") firm with clients in the financial services industry. DE 3 at 2 ¶ 3. Co-defendant Michael Kane was Hydrogen's CEO. *Id.* at 1 ¶ 2. The

Indictment alleges a conspiracy to artificially inflate the price of Hydrogen's digital asset, HYDRO, using a "bot" to conduct automated "spoof"[1] orders and "wash"[2] trades. *Id.* at 6–7. To carry out the alleged scheme, Hydrogen hired the market-making firm Moonwalkers to design and implement the bot. *Id.* at 6 ¶ 5. From June 2018 through April 2019, the scheme allegedly generated $2 million in profits from HYDRO sales at artificially inflated prices. *Id.* at 12 ¶ 17.

Kane, Moonwalkers' CEO Tyler Ostern, and Hydrogen's blockchain engineer Andrew Chorlian have pled guilty to conspiracy counts arising out of the alleged scheme. DE 69; *United States v. Ostern*, Case No. 23-CR-20165-CMA, DE 24 (S.D. Fla. Aug. 16, 2023); *United States v. Chorlian*, Case No. 23-CR-20171-PAS, DE 13 (S.D. Fla. May 16, 2023). At trial, the Government expects that two of these alleged co-conspirators will testify regarding Defendant's knowing participation in the fraudulent scheme to artificially inflate HYDRO's price. DE 74 at 2. They are also anticipated to testify as to Defendant's specific conduct in furtherance of the scheme, and his knowledge of others' false statements on social media that intended to and did cause investors to expect profit from Defendant and his alleged co-conspirators' efforts to promote HYDRO. *Id.* Additionally, the Government seeks to introduce Defendant and his alleged co-conspirators' statements from Slack channels, social media, and other platforms that were made in furtherance of the scheme or add context to the charges. *Id.*

---

[1] The Indictment describes spoof orders as those placed without a legitimate intent to execute, to create a false appearance of active trading. DE 3 ¶ 13.
[2] The Indictment describes wash trades as those involving no change in beneficial ownership, because the same individual is both the buyer and the seller. DE 3 ¶ 12.

## II.     UNCONTESTED REQUESTS

Three of Defendant's requests are unopposed. These are, respectively, his requests (1) to preclude argument that the mere hiring of a market maker was, by itself, illegal or wrongful; (2) to prohibit argument that his company's market maker's mere use of a trading "bot" was wrongful or illegal; and (3) to preclude the Government from relying on Federal Rule of Evidence 801(d)(2)(E) to introduce Defendant's co-conspirators' statements that were not made during the alleged period of the conspiracy. DE 75 at 3–6. The Government does not oppose these defense requests, DE 81 at 10, and therefore, they are **GRANTED**.

## III.    CONTESTED REQUESTS

### a. The Government's request to introduce four categories of statements by Defendant's alleged co-conspirators and Defendant's request to have a pretrial *James* hearing

The Government seeks to introduce statements by Defendant's alleged co-conspirators, touting: (a) the experience, skills, and knowledge of Defendant and other Hydrogen employees; (b) the efforts of Defendant and others at Hydrogen to develop blockchain protocols and applications that would increase the demand for HYDRO; (c) fintechs and Fortune 500 companies that were purportedly partnering with Hydrogen and going to use HYDRO and the related blockchain protocols Defendant and his alleged co-conspirators were developing; and (d) crypto exchanges that had listed HYDRO. DE 74 at 2–3.

The Government's papers did not lay out these anticipated statements with any particularity. Nonetheless, statements about these four topics would be relevant as to an essential element of the Indictment: HYDRO's offerings as an

3

investment contract.[3] If admitted, the statements would support the *Howey* test's third prong,[4] namely the expectation of profits to be derived solely from the efforts of others. The statements would show that it was Defendant and other Hydrogen employees' experience, credentials, and efforts that would lead to the token's success or failure.

These out-of-court statements by Defendant's alleged co-conspirators are also not hearsay if they fall within the hearsay exclusion under Federal Rule of Evidence 801(d)(2)(E).[5] To introduce a co-conspirator statement under that provision, the Government must prove by a preponderance that (1) a conspiracy existed, (2) the conspiracy included both the declarant and the defendant against whom the statement is offered, and (3) the statement was made during and in furtherance of the conspiracy. *United States v. Underwood*, 446 F.3d 1340, 1345–46 (11th Cir. 2006) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

Defendant requests a *James* hearing for the Government to establish pretrial the three prongs required for a Rule 801(d)(2)(E) hearsay exclusion. DE 75 at 7. Although the Government acknowledges it must establish these prongs by a

---

[3] As explained in the Omnibus Order Denying Defendants' Amended Motions to Dismiss, DE 68 at 5, the definition of a "security" in the Securities Act and Securities Exchange Act includes the term "investment contract." 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10). The Supreme Court established the test for an investment contract in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946).
[4] The Eleventh Circuit has divided the *Howey* test into its three elements: (1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others. *See, e.g., S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999).
[5] Under Rule 801(d)(2)(E), a statement is not hearsay if it is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E).

4

preponderance before the statements can be introduced, it objects to a pretrial evidentiary hearing.  *Id*. at 15.

A full-blown pretrial evidentiary hearing is not needed because three of Defendant's alleged co-conspirators have already pled guilty to the conspiracy charged in the Indictment.  These guilty pleas are sufficient to establish the first prong for a Rule 801(d)(2)(E) hearsay exclusion, the existence of a conspiracy. However, the Government must still establish by a preponderance that the specific statements to be offered were made during and in furtherance of the conspiracy and that Defendant knowingly participated in that conspiracy.  For that reason, the Court will require the Government at the Pretrial Conference to proffer sufficient evidence to meet the second and third prongs required for a Rule 801(d)(2)(E) hearsay exclusion.

Therefore, because the statements would be relevant as to an essential element of the Government's case, this request is **CONDITIONALLY GRANTED**, subject to the Government's proffer at the Pretrial Conference to establish Defendant's knowing participation in the alleged conspiracy and that the statements were made during and in furtherance of the alleged conspiracy.

b. **The Government's request to preclude Defendant's evidence that others in the cryptocurrency industry engaged in market manipulation**

The Government seeks to preclude Defendant from presenting evidence or testimony that other companies or individuals in the cryptocurrency industry engaged in manipulative conduct similar to that of Defendant and his alleged co-conspirators.  DE 74 at 9.  Defendant argues that such evidence or testimony

5

should not be categorically excluded, because it is admissible to establish his state of mind.  DE 82 at 9.  However, Defendant has not specified the evidence he seeks to introduce and how it would be introduced.  The fact that certain conduct may be common in the industry is not a defense to wire fraud, much less relevant to the jury's assessment of the issues.  *United States v. Connolly*, 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019); *United States v. Mendlowitz*, 2019 WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019).  Because other industry participants' manipulative conduct is not relevant to the jury's consideration of Defendant's alleged conduct and would confuse the jury, the Government's request to preclude such evidence or testimony is **GRANTED**.

    c. **The Government's request to allow witnesses to testify about their HYDRO transactions and Defendant's request to contest Government evidence of loss if such evidence is permitted**

In its Motion, the Government urges the Court to exclude evidence that HYDRO investors were not harmed by the alleged fraudulent manipulation scheme, because such evidence is not relevant to the elements the Government must prove. DE 74 at 10–11.  In his Motion, Defendant requests that the Court preclude evidence of purported loss caused by the alleged conduct, arguing loss is not an element of the charges.  DE 75 at 7.  In their respective Responses, the parties refine their initial requests. The Government's Response asks the Court to allow purported victims to testify as to details of their HYDRO transactions.  DE 81 at 9. Defendant responds that if the Court permits Government evidence of loss, he "should also be permitted to (a) contest the alleged losses and (b) present evidence of profit as a means of challenging the Government's evidence and theory." DE 82 at

6

11. Both requests, as reflected in the parties' Responses, are **CONDITIONALLY GRANTED.**

The Court will allow the Government to offer testimony from purported victims, including testimony as to any loss from their HYDRO transactions, as that is relevant to show intent to defraud. *See United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994) (citation omitted) ("Proof that someone was victimized by the fraud is thus treated as some evidence of the schemer's intent."). However, the Government may not elicit any potentially inflammatory or excessive testimony as to the impact any loss may have had on those witnesses.

Defendant has not specified the evidence he seeks to introduce to rebut Government evidence of loss. To ensure an efficient trial, at the Pretrial Conference, Defendant must proffer the evidence he seeks to introduce. Subject to that proffer, the Court will determine the admissibility of Defendant's rebuttal evidence.

  d. **The Government's request to exclude evidence and claims that purported victims failed to conduct adequate due diligence before investing in HYDRO**

The Government seeks to preclude evidence and claims that purported victims were negligent or failed to conduct adequate due diligence before investing in HYDRO. DE 74 at 11. Defendant requests that if the Court permits testimony from purported victims at all, it should allow questioning as to the witnesses' trading habits and research prior to trading. DE 82 at 11. Victims' negligence does not vitiate criminal intent or extinguish a fraudulent scheme. *United States v. Mendez*, 737 F. App'x 935, 943 (11th Cir. 2018). A defendant who intends to deceive

7

the ignorant or gullible by preying on their infirmities is no less guilty. *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009). Because evidence of victim negligence is not a defense to fraud and Defendant has not shown what if any probative value such evidence has in this case, its admission would mislead and confuse the jury and otherwise waste time. 737 F. App'x at 943. Therefore, the Government's request is **GRANTED**.

Precluding such evidence does not violate Defendant's Sixth Amendment confrontation right. In *Lankford*, which Defendant cites, the Eleventh Circuit held that the district court erred in precluding questioning from defense counsel that was intended to show the chief government witness' motive for false testimony. *See United States v. Lankford*, 955 F.2d 1545, 1548–49 (11th Cir. 1992). Unlike the government witness in *Lankford*, whose sons' arrest by state authorities may have motivated a desire to cooperate, there has been no demonstration that the purported victims whom the Government will call as witnesses knowingly participated in the alleged illegal scheme or have a motive for testifying falsely for the Government.

e. **Defendant's request to introduce evidence that he relied on representations that Hydrogen received input from legal counsel as to the decentralization plan and hiring of a market maker**

To demonstrate his lack of criminal intent, Defendant seeks to introduce evidence that he relied on representations that Hydrogen received input from legal counsel as to "its decentralization plan and the hiring of a market maker." DE 75 at 10. The Government's Response argues (a) that this is no different than an advice of counsel defense and Defendant needs to meet his burden to assert it, and (b) even

8

if Defendant satisfied his burden, the Court should exclude such evidence under Federal Rule of Evidence 403.  DE 81 at 1.  Defendant, despite his Motion, Response and Reply, failed to precisely identify the evidence he seeks to introduce as to legal counsel's input.  Nor did he explain how he intends to introduce the evidence.  This forces the Court to make assumptions based on what it can glean from Defendant's papers.

Defendant maintains that he is not asserting an advice of counsel defense but a general good faith defense to support his claim of lacking intent to defraud.  DE 75 at 11–12; DE 84 at 5–6.  Evidence showing Defendant's reliance on his supervisor and others' representations that Hydrogen consulted with legal counsel may not necessarily be the same as a true advice of counsel defense.  *See United States v. Romero*, 542 F. App'x 879, 883 (11th Cir. 2013).[6]  The issue is: does he intend to introduce more than the simple statement "Kane told him Hydrogen's counsel approved of Hydrogen's decentralization plan and the hiring of a market maker"?  If his proposed evidence is simply the above statement, is that statement probative of his good faith to negate intent to defraud?

Defendant's earlier Motion to Dismiss and the instant Motions *in Limine* provide some detail as to Hydrogen's decentralization plan, including the efforts to distribute the token to a wider community of developers and engaging

---

[6] In *Romero*, the Eleventh Circuit held that the trial court did not abuse its discretion by refusing to give the requested jury instruction on good-faith reliance on advice of counsel, where defendant allegedly relied on his supervisor's consultation with counsel. *United States v. Romero*, 542 F. App'x 879, 883 (11th Cir. 2013).  The court found that the general good faith instruction covered that defendant's defense and a jury instruction on reliance on advice of counsel was unwarranted. *Id.*

decentralization ambassadors to promote the digital asset. DE 57 at 7; DE 75 at 2, 12. However, there is no showing that such a plan was, in and of itself, illegal. Nor does the Government assert that hiring a market maker is illegal *per se*. The alleged illegal conduct is the wash trading and spoof ordering which allegedly artificially inflated HYDRO's price. Because the legality of market makers and Hydrogen's decentralization plan as described above is uncontested, this derivative advice of counsel statement, assuming it would not be inadmissible hearsay, would not be probative to negate an intent to defraud and would confuse and distract the jury with irrelevant evidence. Therefore, Defendant's request is **DENIED**.

- f. **Defendant's request to preclude the Government from introducing evidence as to Hydro Labs**

Defendant seeks to preclude Government evidence pertaining to Hydro Labs, an entity distinct from Hydrogen, asserting the risk of unfair prejudice from the evidence would substantially outweigh any probative value it may have. DE 75 at 12. The Government responds that the evidence as to the related entity from the alleged conspiracy period is relevant and admissible both as intrinsic evidence and under Federal Rule of Evidence 404(b). DE 81 at 8–9. Because evidence as to this related, follow-on entity is relevant and inextricably intertwined with the charged offenses, Defendant's request is **DENIED**.

The communications referencing Hydro Labs cited in the Government's Response, DE 81 at 7, show Defendant's close involvement with the entity. Defendant states in one message that he and his supervisor "capitalized and drove" Hydro Labs. DOJ-PROD-0000250465. In another, Defendant's alleged

10

co-conspirators speak of Hydro Labs hiring Hydrogen's market making firm. DOJ-PROD-0000000990. This evidence is relevant because it reflects Defendant and his alleged co-conspirators' knowledge of the illegal manipulation scheme involving Moonwalkers. It is admissible as intrinsic evidence because it is linked in time and circumstances with the charged crime, forms an integral and natural part of an account of the crime, and is necessary to complete the story. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Accordingly, it is

ORDERED that the Motions *in Limine* [DE 74; DE 75] are GRANTED IN PART and DENIED IN PART as set out in this Order and summarized below:

1. Defendant's request to preclude argument that the mere hiring of a market maker was, by itself, illegal or wrongful is **GRANTED**;

2. Defendant's request to prohibit argument that his company's market maker's mere use of a trading "bot" was wrongful or illegal is **GRANTED**;

3. Defendant's request to preclude the Government from relying on Federal Rule of Evidence 801(d)(2)(E) to introduce Defendant's co-conspirators' statements that were not made during the alleged period of the conspiracy is **GRANTED**;

4. The Government's request to introduce four categories of statements by Defendant's alleged co-conspirators is **CONDITIONALLY GRANTED** subject to the Government's proffer at the Pretrial Conference;

5. Defendant's request to have a pretrial *James* hearing is **DENIED**;

6. The Government's request to preclude Defendant's evidence that others in the cryptocurrency industry engaged in market manipulation is **GRANTED**;

7. The Government's request to allow witnesses to testify about their HYDRO transactions is **CONDITIONALLY GRANTED** in that the Government may not elicit inflammatory or excessive testimony;

8. Defendant's request to contest Government evidence of loss is **CONDITIONALLY GRANTED** subject to Defendant's proffer at the Pretrial Conference;

9. The Government's request to exclude evidence and claims that purported victims failed to conduct adequate due diligence before investing in HYDRO is **GRANTED**;

10. Defendant's request to introduce evidence that he relied on representations that Hydrogen received input from legal counsel as to the decentralization plan and hiring of a market maker is **DENIED**; and

11. Defendant's request to preclude the Government from introducing evidence as to Hydro Labs is **DENIED**.

DONE AND ORDERED in Miami, Florida, this 6th day of January, 2024.

_____
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc: All counsel of record